# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEIDI KLEIN, individually, and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>WHIRLPOOL CORPORATION,<br><br>                              Defendant. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Heidi Klein ("Plaintiff" or "Klein"), by and through her undersigned counsel, individually and on behalf of all other persons and entities similarly situated, alleges the following facts and claims, based on knowledge as to matters relating to herself and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.     Plaintiff brings this class action individually and on behalf of the proposed class defined below ("Class") against defendant Whirlpool Corporation ("Defendant" or "Whirlpool") to obtain relief, including, among other things, damages and injunctive relief.

2.     Plaintiff brings this action to remedy violations of law in connection with Whirlpool's design, manufacture, marketing, advertising, selling, warranting, and servicing of its Duet, Duet HT, and Duet Sport front-loading automatic washing machines ("Washing Machines" or "Machines").  These Washing Machines have serious design defects (collectively "Design Defects") that cause them to:

(a)     accumulate mold and mildew and/or residue or growth within the Washing Machines;

(b)     produce a moldy or mildewy odor that permeates the Washing Machines and/or consumers' homes;

(c)     produce a moldy or mildewy odor on clothes and other items washed in the Machines;

(d)     fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew and/or associated foul odors; and

(e)     be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold.  The problems caused by the Design Defects are collectively referred to as "Mold Problems."

3.     Plaintiff asserts claims for violations of Pennsylvania's Unfair Trade Practices And Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq.*; the Pennsylvania Uniform Commercial Code, 13 Pa. Stat. Ann. § 2313 and § 2314 (breach of express and implied warranty); the Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312, *et seq.*, with respect to Whirlpool's written and implied warranties; and unjust enrichment.

## THE PARTIES

### A.     Plaintiff

4.     Plaintiff Heidi Klein is, and at all relevant times has been, a resident and citizen of Pennsylvania.  Klein purchased a Washing Machine model number GHW9100LW2 and serial number CSR1306657.  Klein purchased her Machine from Lowe's in Hazleton, Pennsylvania in or about May 2005.  Klein paid approximately $1,100 for the Machine.  Klein purchased the Washing Machine for household purposes, and at all pertinent times used the Machine for its

intended purpose with the use of the recommended high-efficiency ("HE") detergent. She has been experiencing Mold Problems in the Machine and on items washed in the Machine. Klein has provided Whirlpool with sufficient pre-suit notice of the Mold Problems in her Machine.

**B.** **Defendant**

5.      Whirlpool is a Delaware corporation and maintains its principal place of business at 2000 M-63 N, Benton Harbor, Michigan 49022. Whirlpool markets and sells products, including the Washing Machines, primarily under the brand names Whirlpool, Maytag, KitchenAid, Jenn-Air, Roper, Estate, Admiral, Magic Chef, Amana, Inglis, Acros, Supermatic, and Bauknecht throughout the United States, including this judicial district, itself and by and through its Whirlpool and other retail outlets.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and this is a class action in which the Class members and Whirlpool are citizens of different States.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1391, because Whirlpool does business throughout this district and Klein resides in this district. At all pertinent times, Whirlpool was and is in the business of marketing, advertising, distributing, and selling products, including the Washing Machines, throughout Pennsylvania and this judicial district, as well as nationwide, by and through various authorized dealers. The Washing Machines that form the basis of this Complaint were purchased from Whirlpool and/or from Whirlpool's authorized dealers and placed in the stream of commerce by Whirlpool.

## FACTUAL BACKGROUND

### A.  Facts Common To The Case

8.      Whirlpool holds itself out to the public as a manufacturer of safe, cutting-edge, and easy-to-use home appliances, including washing machines.  Whirlpool is in the business of manufacturing, producing, distributing, and/or selling washing machines throughout the United States.

9.      Whirlpool manufactured, produced, and/or distributed front-loading Washing Machines for sale by its network of authorized dealers, including several leading retailers in the United States, such as Lowe's, Sears, Best Buy, PC Richard and Son, and other large retail chains.

10.      Whirlpool provided Plaintiff and each purchaser of the subject Washing Machines with an express one-year factory warranty as follows:

> For one year from the date of purchase, when this major appliance is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter "Whirlpool") will pay for Factory Specified Parts and repair labor to correct defects in materials or workmanship.

Whirlpool has these same obligations with respect to Plaintiff and all Class members, but has failed to satisfy these obligations.

11.      In recognition of the anticipated useful life of the Machines, Whirlpool also provided a "limited lifetime warranty on the stainless steel drum" for most of the Whirlpool Duet and Duet HT Machines.  This warranty stated that, "for the lifetime of the washer," Whirlpool would "pay for FSP® (factory specified products), replacement parts for the Stainless Steel wash drum if defective in materials or workmanship."

12.     In conjunction with each sale, Whirlpool marketed, advertised, and warranted that the defective Washing Machines were of merchantable quality and fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not cause Mold Problems.

13.     Whirlpool also made express representations about the quality of its Washing Machines.  For example, Whirlpool sold the Washing Machines as "High Efficiency" and labeled the Machines as "ENERGY STAR" compliant.  ENERGY STAR is a voluntary labeling program designed to identify and promote energy-efficient products through a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy.  Members of the Class have purchased the Washing Machines, in part, on the basis that the Machines would save money and energy.  In reality, at the recommendation of Whirlpool and independently, Class members are having to run empty cycles of hot water and/or bleach and/or other products to combat the Mold Problems within the Machines.  Further, as the Mold Problems became undeniable, Whirlpool began recommending that Machine owners run three successive washer cleaning cycles with an Affresh™ tablet in each cycle to ameliorate Mold Problems.  Affresh™ is a product designed, manufactured, and marketed by Whirlpool specifically to address Mold Problems in the Washing Machines.  Upon information and belief, the ratings (Modified Energy Factor) provided by Whirlpool to the government entities do not take into account the extra loads run through the Machines to try to clean the Machines.

14.     Whirlpool provides care instructions within the "Use & Care Guides" provided after the purchase and installation of the Washing Machines.  None of the Use & Care Guides make any disclosure about any risk of Mold Problems when the recommended HE detergent is used as instructed.  Whirlpool fails to inform consumers, through the Use & Care Guides or any

other written disclosure, that, even when consumers operate the Washing Machines as instructed by Whirlpool, Mold Problems will occur with virtually every Machine, and that they will result, regardless of Washing Machine maintenance, due to defects in the design of the Washing Machines.

15. Some of the Use & Care Guides only mention that "noticeable mold and mildew" issues may arise when using "regular" detergent rather than the recommended "HE" or "High Efficiency" detergent. Plaintiff used the recommended HE detergent. Other Use & Care Guides suggest that Washing Machine owners leave the washer door open between uses to ameliorate "Washer odor." That suggestion poses obvious safety risks to children and pets; indeed, a young child recently drowned in a Kenmore front-loading washing machine manufactured by Whirlpool, causing the U.S. Consumer Product Safety Commission to open an investigation regarding safety standards for front loaders. Despite following Whirlpool's sometimes risky instructions, Plaintiff still experienced Mold Problems with her Washing Machine.

16. Each Washing Machine has a separate compartment/dispenser with a "fill line" for the recommended amount of liquid and/or powder HE detergent. Similarly, each Washing Machine has a separate compartment/dispenser with a "fill line" for the recommended amount of liquid fabric softener.

17. Plaintiff and members of the Class experienced, and continue to experience, Mold Problems, even though they followed the instructions and recommendations by Whirlpool in its Use & Care Guide and elsewhere.

18. Whirlpool intended for customers to believe its statements and representations about its Washing Machines and to trust that these high-end Machines were and are of first-rate

quality.  Whirlpool has concealed material facts regarding the Washing Machines, including serious design defects, which cause the Washing Machines to:

(a)    accumulate mold and mildew residue or growth within the Washing Machines;

(b)    produce a moldy or mildewy odor that permeates consumers' Machines and homes;

(c)    produce a mold or mildew odor on clothes washed in the Machines; and

(d)    be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed and sold, even though consumers have used the Washing Machine as instructed by Whirlpool, including using HE detergent and fabric softener in the amounts instructed by Whirlpool.

19.    The Washing Machines are defective in many respects.  Due to those defects, the use of the Washing Machine – as instructed by Whirlpool – results in conditions creating an excessive propensity for the Washing Machines to accumulate mold and mildew, residue or growth and moldy odors.  These defects include, among other things:

(a)    the failure of the Washing Machines to properly drain water and to avoid lingering moisture;

(b)    the failure of the Washing Machines to sufficiently rinse away HE detergent and liquid fabric softener to prevent the accumulation of residues that contribute to the formation of mold and mildew and moldy odors;

(c)    the failure of the Washing Machines to prevent the accumulation of residues and growths that contribute to the formation of mold and mildew and moldy odors when

products such as HE detergent and liquid fabric softener are used in the amounts instructed and recommended by Whirlpool;

(d)     the failure of the Washing Machines to have dispenser compartments that contain proper fill lines for HE detergent and liquid fabric softener to prevent the accumulation of residues that contribute to the formation of mold and mildew and moldy odors; and

(e)     the failure of the Washing Machines to clean themselves in a manner necessary for the proper functioning of the Machine for the purpose for which it was intended.

20.     Upon information and belief, the defects in the stainless steel drums, which come with a lifetime warranty, also play a role in causing the Mold Problems.  Due to the defects in the drums, *inter alia*, the Machines do not fully or properly drain in connection with each and every wash cycle and/or do not sufficiently permit the rinsing away and/or prevent the accumulation of residues and growths.  As a result, the defects in the drums do not permit the Machines to clean themselves after each load.  Defects in the door seal ("boot") also play a role in the accumulation of mold, mildew and/or foul odors.  Among other things, the door seal does not fully or properly drain and/or remove residues and growths after each wash.

21.     Whirlpool knew and was aware, or should have known and been aware, before marketing and selling the Washing Machines that they were inherently defective because, even when operated as instructed, the Machines were substantially likely to experience Mold Problems.  Whirlpool nonetheless failed to warn its customers of the Design Defects inherent in the Washing Machines or the Mold Problems which would result from the alleged defects.

22.     As a result of the Design Defects that have plagued and continue to plague the Washing Machines, Plaintiff and the other Class members overpaid for the Machines.  For the reasons detailed herein, moreover, Whirlpool knew or should have known that the value of the

Washing Machines it was selling to consumers was significantly inflated by its misrepresentations and misleading information concerning those Machines. Had Plaintiff and the other Class members known about the Design Defects affecting the Washing Machines, they would not have paid the significant sums that they paid for the Machines.

23. As a result of the mold or mildew odor that permeates items "washed" in the Machines, many consumers have been forced to re-wash or even replace clothes, towels and other items that have been ruined by the Design Defects in these Washing Machines.

24. Whirlpool has profited, either directly or indirectly, by concealing the nature of the Design Defects and misrepresenting the cause of the Mold Problems associated with the defects, which have enabled it to:

(a) sell the Washing Machines at premium prices;

(b) profit on repair services purportedly to fix the Mold Problems; and

(c) sell Whirlpool Washing Machine-related products such as Affresh™ (from which Whirlpool earns a profit) which it misrepresented as capable of addressing and resolving the Mold Problems arising from the defects at issue. In fact and in truth, Whirlpool has no effective remedy for the Design Defects and Mold Problems and has taken no action to correct the defects.

25. As a result of Whirlpool's false and misleading statements and concealment, and Whirlpool's other misconduct described in this Complaint, Plaintiff and the Class bought thousands of the Washing Machines and have suffered – and continue to suffer – injury as a result of the defective nature of these Washing Machines and as a result of Whirlpool's misconduct.

26.     Far from being an innocuous or isolated defect or problem, in addition to Plaintiff,
thousands of other Washing Machine purchasers have complained directly (and indirectly) to
Whirlpool and its authorized dealers and service personnel, and on Internet web sites, about the
Design Defects and Mold Problems with the Machines.

27.     Indeed, the Internet is replete with references and complaints regarding the
Washing Machines that mirror allegations in this Complaint.  *See, e.g.*,
http://www.my3cents.com/productReview.cgi?compid=226&product=duet+washer;
http://www.consumeraffairs.com/homeowners/whirlpool_washing_machine.html.

28.     As a result of the avalanche of consumer complaints regarding the defects that
Whirlpool would not and/or could not remedy, several entrepreneurs have created and marketed
products designed to treat, eliminate and/or minimize the Mold Problems caused by the Design
Defects in the Washing Machines.  These products include SmellyWasher and NuFreshNow.
Due to the widespread and intractable nature of the Mold Problems, these entrepreneurs have
sold tens of thousands, if not hundreds of thousands, of units of their products to consumers.  As
further evidence of the serious nature of these problems, Proctor & Gamble created a new
product called Tide Washing Machine Cleaner in an attempt to address these intractable Mold
Problems.

29.     Reflecting its knowledge that the Design Defects resulted in serious Mold
Problems in its Washing Machines, Whirlpool developed a new product called Affresh™ to try
and address these serious problems.  As part of its marketing program for Affresh™, in
September 2007, Whirlpool finally disseminated information about the "potential" for buildup of
"mold and mildew stains" in the Washing Machines and offered for sale Affresh™ tablets as an
alleged solution to the problems.  On the packaging for this product, Whirlpool represented that

Affresh™ "[r]emoves odor-causing residue in HE Washers[,]" and "[u]sed once a month, it keeps your machine fresh and clean by removing the odor-causing residue that can build up in all HE Washers." On its website, affresh.com, Whirlpool admitted that Whirlpool Washing Machines "up to 1 year in age should be cleaned once a month with Affresh™ cleaner to prevent odor-causing residue from accumulating." Despite its representations, Whirlpool's Affresh™ has failed to prevent and/or fix Mold Problems experienced by Plaintiff and other Class members.

30.     Due to the ineffectiveness of Affresh™, Whirlpool modified Affresh™ and created and marketed an Affresh™ Washing Cleaner Kit that included Power Puck™ tablets and Grit Grabber™ cloths. On its Affresh™ website, Whirlpool represented that its Washing Machines "older than 1 year require special attention, particularly if odor has set in," and that the Grit Grabber™ cloths were designed to "help remove the residue and odor you can't reach with Power Puck Tablets." Despite its representations, Whirlpool's Affresh™ Washing Cleaner Kit also fails to prevent and/or alleviate the Mold Problems experienced by Plaintiff and other Class members.

31.     Nonetheless, Whirlpool unjustly enriched itself through the sale of its Affresh™ products, while failing to remedy the defect with the Machines.

32.     The Washing Machines purchased by Plaintiff and Class members have failed to work due to a defect in design (which failure to work did not result from the ordinary course of usage by Plaintiff or Class members).

33.     On its website at affresh.com, Whirlpool admits that newer front-loading high efficiency Machines are more prone than older top-loading washers to build up residue that leads to odors. Despite this knowledge, Whirlpool failed to take the necessary steps to adequately design and/or test the Washing Machines to ensure that they were free from the Design Defects

complained of herein. Instead, Whirlpool sold and continues to sell these Washing Machines even though it knew, or was reckless in not knowing, that they:

      (a)    contained inherent material defects;

      (b)    were not of merchantable quality; and

      (c)    would result in the formation of mold, mildew, residue or growth and moldy/mildewy and other foul odors, even when used as instructed.

34.    Despite having repeated notice of the above-described Design Defects in its Washing Machines and despite the reasonable expectations of consumers created by Whirlpool's marketing of its Washing Machines, Whirlpool has engaged in the following routine, albeit wrongful course of conduct, wherein Whirlpool:

      (a)    designed, manufactured and sold Washing Machines with Design Defects that cause Mold Problems;

      (b)    failed to disclose that the Washing Machines had Design Defects that cause Mold Problems;

      (c)    continued to represent expressly or by implication that the Washing Machines that Plaintiff and Class Members purchased were dependable, cost effective, and would provide outstanding cleaning and performance as washing machines, when it knew that these statements were false;

      (d)    continued to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known the Washing Machines were not dependable and would not withstand normal operation;

      (e)    failed to disclose to consumers the substantial risk of Washing Machine failure and the material defects in the Washing Machines;

(f)     failed to disclose the nature of the defects to consumers;

(g)     failed to disclose the many complaints it received from consumers (or the high incidence of attempted but futile repairs of the Washing Machines);

(h)     failed to implement a recall to adequately announce, remedy, and correct the defects for consumers;

(i)     failed to disclose to consumers that it was not committed to making effective repairs under its warranties to address Mold Problems;

(j)     failed to take action to correct its omissions or false or misleading implied or express representations about the use, efficacy, qualities, and benefits of its Washing Machines; and

(k)     failed to disclose that, despite following the recommended procedures within the Whirlpool Use & Care Guide, consumers would still experience Mold Problems.

35.     By engaging in the foregoing course of conduct, Whirlpool has caused consumers – including Plaintiff and Class Members – to be aggrieved and suffer ascertainable losses in that, among others things, Whirlpool's course of conduct systematically:

(a)     caused Plaintiff and the Class members to pay premium prices for a defective product;

(b)     reduced the value of the Washing Machines purchased by Plaintiff and Class members; and

(c)     caused reasonable consumers like Plaintiff and Class members to spend money for attempted repairs and other purported remedies of the defects in their Machines that they would not have spent but for Whirlpool's common course of conduct.

36.     To this day, Whirlpool continues to conceal material information from users, consumers, and the public, that the Machines are inherently defective, and that the Machines are not of merchantable quality.

37.     Any limitations on remedies contained in Whirlpool's express warranties fail of their essential purpose and are unenforceable with respect to the Mold Problems at issue here. When Whirlpool is notified of the Mold Problems, it fails to provide any repairs, replacement of parts, or any other remedy that adequately addresses the Mold Problems.  For the same reason, to the extent there is any notice requirement imposed by law, notice is not required both because Whirlpool has (and had) actual knowledge of the Mold Problems and notice to it would be futile (in that Whirlpool has failed to provide an effective remedy).

38.     All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Complaint and the similar complaints previously filed and transferred to the multidistrict litigation *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, MDL No. 2001, Civ. No. 1:08-wp-65000 (N.D. Ohio).  Moreover, in light of the thousands of complaints consumers have made directly to Whirlpool, Whirlpool's authorized dealers, and manufacturers of products that attempt to remediate the Mold Problems, and complaints posted on the Internet and other forums, and Whirlpool's refusal to effectively resolve the Mold Problems, any additional pre-suit complaints or other notice to Whirlpool would have been futile.

### B.     Klein's Experiences With Her Washing Machine

39.     Klein purchased a Washing Machine model number GHW9100LW2 and serial number CSR1306657 from Lowe's in Hazleton, Pennsylvania in or about May 2005.  Klein paid

approximately $1,100 for the Machine. One of the reasons she purchased the Washing Machine was that it was advertised as an efficient appliance.

40.     Approximately 6 months after the purchase of her Washing Machine, Klein began to experience Mold Problems in her Machine. Klein has observed mold on the door seal and in the detergent dispenser, and has attempted to address the Mold Problems by using a Tide washer cleaning product in her Machine and using soap and water to clean the Machine. Despite Klein's efforts to clean her Machine, the Mold Problems continue to this day.

41.     Since about May 2006, Klein has complained about the Mold Problems to Whirlpool a total of 5 times. Whirlpool responded to Klein's complaints by instructing her to clean the Machine and leave the door open. Despite having followed Whirlpool's instructions, Klein's Machine continues to experience Mold Problems.

## TOLLING

### A.     Discovery Rule

42.     Plaintiff's claims accrued upon discovery that the Washing Machines caused Mold Problems, indicating that the Machines have Design Defects. Because Whirlpool concealed the fact that the Machines have Design Defects which cause Mold Problems, Plaintiff did not discover and could not have discovered this fact through reasonable and diligent investigation until after she experienced the Mold Problems, could reasonably exclude other potential causes of the Mold Problems, and discovered that her Machine caused the Mold Problems.

### B.     Active Concealment Tolling

43.     The statute of limitations has been tolled by Whirlpool's knowing and active concealment of the fact that the Washing Machines cause Mold Problems. Whirlpool kept

Plaintiff ignorant of vital information essential to the pursuit of her claim, without any fault or lack of diligence on the part of Plaintiff. Plaintiff could not reasonably have discovered the fact that her Washing Machine would cause Mold Problems due to Design Defects.

**C.    Estoppel**

44.    Whirlpool was and is under a continuous duty to disclose to Plaintiff the true character, quality, and nature of the Washing Machines. At all relevant times, and continuing to this day, Whirlpool knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Washing Machines. Plaintiff reasonably relied upon Whirlpool's affirmative misrepresentations and knowing, affirmative, and/or active concealment. Based on the foregoing, Whirlpool is estopped from relying on any statutes of limitation in defense of this action.

**CLASS ACTION ALLEGATIONS**

45.    Plaintiff brings this action on behalf of herself and all other persons similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

46.    The Class that Plaintiff seeks to represent is defined as follows:

> **Pennsylvania Class**:  All persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Pennsylvania.

Excluded from the Class are Whirlpool, its affiliates, employees, officers and directors, persons or entities that distribute or sell the Washing Machines, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any of the Class should be expanded or otherwise modified.

**B.    Numerosity/Impracticability of Joinder**

47.    The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes thousands of members.  The precise number of members can be ascertained through discovery, which will include Whirlpool's sales, warranty service, and other records.

**C.    Commonality and Predominance**

48.    There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to the following:

      (a)    Whether the Washing Machines are materially defective – and what are the defects;

      (b)    Whether Whirlpool knew that the Washing Machines were and are materially defective;

      (c)    Whether Whirlpool omitted and concealed material facts from its communications and disclosures to Plaintiff and the Class regarding the defects inherent in the Washing Machines;

      (d)    Whether Whirlpool has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Machines;

      (e)    Whether Whirlpool breached its warranty and/or extended warranties;

      (f)    Whether Whirlpool breached its implied warranties;

      (g)    Whether Whirlpool has been unjustly enriched;

(h)     Whether, as a result of Whirlpool's conduct, Plaintiff and the Class have suffered damages and, if so, the appropriate amount thereof; and

(i)     Whether, as a result of Whirlpool's misconduct, Plaintiff and the Class are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

**D.     Typicality**

49.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all Class members have been injured by the same wrongful practices of Whirlpool.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

**E.     Adequacy**

50.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiff nor her attorneys have any interests contrary to or conflicting with the Class.

**F.     Superiority**

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Further, individual members of the Class do not have a significant

interest in individually controlling the prosecution of separate actions, and individualized

litigation would also result in varying, inconsistent, or contradictory judgments and would

magnify the delay and expense to all of the parties and the court system because of multiple trials

of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the

management of this action that would preclude its maintenance as a class action.  In addition,

Whirlpool has acted or refused to act on grounds generally applicable to the Class and, as such,

final injunctive relief or corresponding declaratory relief with regard to the members of the Class

as a whole is appropriate.

52.     Plaintiff does not anticipate any difficulty in the management of this litigation.

53.     Whirlpool has, or has access to, address information for the Class members,

which may be used for the purpose of providing notice of the pendency of this action.

## COUNT I
## <u>Asserted On Behalf Of The Class</u>
## <u>(Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) – Written Warranty)</u>

54.     Plaintiff incorporates by reference each preceding and succeeding paragraph as

though fully set forth herein.

55.     Whirlpool's Washing Machines are "consumer products" as that term is defined

by 15 U.S.C. § 2301(1).

56.     Plaintiff and Class members are "consumers" as that term is defined by 15 U.S.C.

§ 2301(3).

57.     Whirlpool is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C.

§ 2301(4) and (5).

58.     Whirlpool provided Plaintiff and Class members with "written warranties" as that

term is defined by 15 U.S.C. § 2301(6).

59. In its capacity as a warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

60. All jurisdictional prerequisites, including pre-suit notice, have been satisfied herein.

61. By Whirlpool's conduct as described herein, including Whirlpool's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Whirlpool has failed to comply with its obligations under its written and promises, warranties, and representations.

62. As a result of Whirlpool's breach of express warranties, Plaintiff and Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. § 2310.

## COUNT II
### Asserted On Behalf Of The Class
### (Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) – Implied Warranty)

63. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein

64. Whirlpool's Washing Machines are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

65. Plaintiff and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

66. Whirlpool is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. §§ 2301(4) and (5).

67.     Whirlpool provided Plaintiff and Class members with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7).

68.     In its capacity as a warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the implied warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is void.

69.     All jurisdictional prerequisites, including pre-suit notice, have been satisfied herein.

70.     Plaintiff and Class members are in privity with Whirlpool in that they purchased their Washing Machines directly from Whirlpool, or from an actual or apparent agent of Whirlpool such as Whirlpool's authorized dealers.

71.     Plaintiff and Class members are also in privity with Whirlpool by virtue of the contractual relationship stemming from Whirlpool's manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, which is enforceable Plaintiff and Class members as against Whirlpool regardless of where, or from whom, the Washing Machines were acquired.

72.     By Whirlpool's conduct as described herein, including Whirlpool's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Whirlpool has failed to comply with its obligations under its written and implied promises, warranties, and representations.

73.     As a result of Whirlpool's breach of implied warranties, Plaintiff and Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. § 2310.

## COUNT III
## Asserted On Behalf Of The Class
## (Violation of Breach of Express Warranty (13 Pa. Stat. Ann. § 2314))

74.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

75.     Whirlpool made affirmations of fact and promises to Plaintiff and Class members that related to the Washing Machines as more fully described herein.

76.     Whirlpool's affirmations of fact and promises became part of the basis of the bargain between the parties.

77.     These affirmations of fact and promises created an express warranty that the Washing Machines would conform to Whirlpool's affirmations and promises.

78.     Whirlpool uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from serious defects and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

79.     Whirlpool is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Plaintiff and Class members.

80.     Whirlpool has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Whirlpool, and by failing to repair or replace the defects and/or defective parts.

81.     As set forth above, Whirlpool's warranty fails in its essential purpose and, accordingly, Plaintiff and Class members cannot and should not be limited to the remedies set forth in Whirlpool's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

82.     Whirlpool has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and Whirlpool's knowledge of the defects in the Washing Machines, Whirlpool has failed and refused to honor its warranty, even though it knows of the defects inherent in the Washing Machines.

83.     Plaintiff and Class members have given Whirlpool a reasonable opportunity to cure its failures with respect to its warranty, and Whirlpool has failed to do so.

84.     Whirlpool has failed to provide Plaintiff and Class members, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiff and Class members.

85.     As a result of Whirlpool's breach of warranty, Plaintiff and Class members have suffered damages in an amount to be determined at trial.

**COUNT IV**
**Asserted On Behalf Of The Class**
**(Violations of Breach of Implied Warranty (13 Pa. Stat. Ann. § 2314))**

86.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

87.     Whirlpool impliedly warranted that its Washing Machines were of good and merchantable quality, fit and safe for their ordinary intended use.

88.     There were Design Defects in the Washing Machines manufactured, distributed, and/or sold by Whirlpool to middlemen who then resold the Machines to Plaintiff and Class members; those Design Defects existed at the time the Machines were sold to Plaintiff and Class members; and those Design Defects were the direct and proximate cause of injury to Plaintiff and Class members.

89.     The Design Defects – which cause noxious odors to permeate the home, disturb the repose of its inhabitants, and produce foul-smelling wash – render Whirlpool's Washing Machines unfit for their intended purpose (that of producing clean and clean-smelling wash), and not of merchantable quality.

90.     As a direct and proximate result of Whirlpool's warranty breach, Plaintiff and Class members were caused to suffer loss attributable to the decreased value of the product itself, and consequential damages – losses sustained by the purchase of the defective product – and Plaintiff and Class members will have to spend monies to repair and/or replace the washers.

## COUNT V
## Asserted On Behalf Of The Class
## (Violation of Pennsylvania's Unfair Trade Practices And Consumer Protection Law (73 Pa. Stat. Ann. §§ 201-1, et seq.))

91.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

92.     Plaintiff and members of the Class are "persons" within the meaning of Pennsylvania's Unfair Trade Practices And Consumer Protection Law ("UTPCPL").

93.     At all relevant times material hereto, Whirlpool conducted trade and commerce in Pennsylvania and elsewhere within the meaning of the UTPCPL.

94.     The UTPCPL defines "[u]nfair methods of competition" and "unfair or deceptive acts or practices" to include:  "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" "(vii) Representing that goods or services are of a particular standard, quality or grade, or that

goods are of a particular style or model, if they are of another;" and "(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

95. The UTPCPL is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

96. Whirlpool has engaged in deceptive practices related to the sale of the defective Washing Machines, including: (1) marketing and selling Washing Machines with Design Defects that cause Mold Problems with normal use and/or created a substantial risk that Mold Problems would occur with normal use; and (2) intentionally failing to disclose and/or concealing these known defects and risks.

97. Whirlpool consciously failed to disclose material facts to Plaintiff and the Class with respect to the alleged defects.

98. Whirlpool's unconscionable conduct described herein included the omission and concealment of material facts concerning the Washing Machines.

99. Whirlpool intended that Plaintiff and members of the Class rely on the acts of concealment and omissions, so that Plaintiff and the Class would purchase the Washing Machines.

100. Had Whirlpool disclosed all material information regarding the Washing Machines to Plaintiff and the Class, they would not have purchased the Machines, or would have paid a lower price for them.

101. The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiff and the Class to suffer an ascertainable loss in the form of, among other things, monies spent to repair, purchase cleaning products or replace the Washing Machines and loss in value of the Washing Machines, and they are entitled to recover such

damages, together with appropriate penalties, including treble damages, attorney's fees, and costs of suit.

## COUNT VI
### Asserted On Behalf Of The Class
### (Unjust Enrichment)

102. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

103. Plaintiff asserts this claim in the alternative on behalf of Plaintiff and Class members, to the extent that the warranties do not govern all of Plaintiff's and Class members' claims, or there is any determination that Plaintiff does not have standing to assert any contractual claims asserted against Whirlpool or because of any alleged absence of contractual privity or otherwise.

104. Plaintiff and Class members conferred a benefit on Whirlpool, of which benefit Whirlpool had knowledge. By its wrongful acts and omissions described of herein, including selling the Washing Machines, Whirlpool was unjustly enriched at the expense of Plaintiff and Class members.

105. The detriment to Plaintiff and Class members and Whirlpool's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

106. It would be inequitable for Whirlpool to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

107. Plaintiff and Class members seek restitution from Whirlpool and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by

Whirlpool from its wrongful conduct and the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## <u>REQUEST FOR RELIEF</u>

Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Whirlpool as follows:

A.     For an order certifying the Class, under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), and appointing Plaintiff as representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

B.     For all recoverable compensatory, statutory and other damages sustained by Plaintiff and the Class;

C.     For costs;

D.     For both pre-judgment and post-judgment interest on any amounts awarded;

E.     For appropriate injunctive relief;

F.     For payment of attorneys' fees and expert fees as may be allowable under applicable law; and

G.     For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Dated:  September 29, 2010

Respectfully submitted,

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP

By:  *s/Natalie Finkelman Bennett*
Natalie Finkelman (ID No. 57197)
nfinkelman@sfmslaw.com
James C. Shah
jshah@sfmslaw.com
35 East State Street
Media, PA  19063
Telephone:  (610) 891-9880
Facsimile:   (610) 891-9883

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
jselbin@lchb.com
Allen Wong
awong@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Mark P. Chalos
mchalos@lchb.com
150 Fourth Avenue North, Suite 1650
Nashville, TN  37219
Telephone:  (615) 313-9000
Facsimile:   (615) 313-9965

*Attorneys for Plaintiff*